CHALOS & CO, P.C.
*Attorneys for Plaintiff*
Melissa Patzelt-Russo
Briton P. Sparkman
55 Hamilton Avenue
Oyster Bay, NY 11771
Telephone: (516) 714-4300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GLANDER INTERNATIONAL BUNKERING INC., <br><br> Plaintiff, <br><br> v. <br><br> M/V DVINA GULF, IMO No. 9336464, her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendant. | IN ADMIRALTY <br><br> NO. 2:19-cv-05206 |

<u>**PLAINTIFF GLANDER INTERNATIONAL BUNKERING INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS …………………………………………………………………..…i

TABLE OF AUTHORITIES ……………………………………………………………..…..ii

FACTUAL AND PROCEDURAL BACKGROUND........................……………………..……..1

ARGUMENT ……………………….............……………………………………………………3

    A.  STANDARD OF REVIEW ……………………………………………………..........3

    B.  THE BUNKER SUPPLY CONTRACTS ARE
        GOVERNED BY AND ENFORCEABLE UNDER U.S. LAW......................................4

    C.  PLAINTIFF HAS A VALID MARITIME LIEN AGAINST THE VESSEL..................6

        *1. Bunkers are Necessaries Under CIMLA*…………………………………….……..8

        *2. Bunkers were supplied to the Vessel*………………………………………….....9

        *3. Sea Oil Was Authorized to Bind the Vessel*……………………………………....9

    D.  PLAINTIFF IS ENTITLED TO RECOVERY
        OF ITS COSTS AND INTEREST ……………………………………......................10

CONCLUSION ……………………………………………………………………..………11

CERTIFICATE OF SERVICE …………………………………………………………...12

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255,
50 V.I. 1134 (3d Cir. 2008)..................................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ………………………..………3,4

*A/S Dan-Bunkering Ltd. v. M/V Zamet*, 945 F. Supp. 1576 (S.D.Ga.1996)...................................9

*Blominflot, Inc. v. M/V Henrich S*, 465 F.3D 144 (4th Cir. 2006) ………………………....…7,8

*Boland Marine & Mfg. Co., Inc. v. M/V HER AN*,
1998 U.S. Dist. LEXIS 6809 (E.D. La. 1998).................................................................................8

*Cleotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) ………………………………..……...3

*Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*,
310 U.S. 268, 60 S. Ct. 937, 84 L. Ed. 1197 (1940) …………………………………….…..7

*Equilease Corp. v. M/V Sampson*, 793 F.2d 598 (5th Cir. 1986) …………………………..……..8

*Ferromet Resources, Inc. v. Chemoil Corp.*, 5 F.3d 902 (5th Cir. 1993)…………………...…...8

*Galehead, Inc. v. M/V ANGLIA*, 183 F.3d 1242 (11th Cir. 1999) …………………………...…..9

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*,
585 F.3d 236 (5th Cir. 2009).........................................................................................................5

*Lake Charles Stevedores. Inc. v. PROFESSOR VLADIMIR POPOV MV*,
199 F.3d 220 (5th Cir. 1999)..........................................................................................................8

*Marine Oil Trading Ltd. v. M/V PAROS*, 287 F. Supp. 2d 638 (E.D. Va. 2003)…………….…..8

*Maritrend, Inc. v. Serac & Co.*, 348 F.3d 469 (5th Cir. 2003) ……………………………………7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ……………………….…………….3,4

*Matter of Bankers Trust Co.*, 658 F.2d 103, 108 (3d Cir. 1981),
    *cert. denied*, 456 U.S. 961, 102 S. Ct. 2038, 72 L. Ed. 2d 485 (1982)...............................11

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)……………………………………..………..5

*New Moon Shipping Co. v. MAN B&W Diesel AG*,
121 F.3d 24 (2d Cir. 1997) ………………………………………………………………..…….6

*Nustar Energy Servs. v. M/V Cosco Auckland,*
No. 4:14-cv-3648, 2015 U.S. Dist. LEXIS 145036 (S.D. Tex. Oct. 26, 2015)…………………....8

*Oceanconnect.com, Inc. v. M/V FESCO ANGARA*, No. 2:09-1694,
2012 U.S. Dist. LEXIS 125241 (W.D. La. Aug. 31, 2012) ……………………………....…….10

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258 (5th Cir. 2011)………………5

*Payne v. SS Tropic Breeze*, 274 F. Supp. 324 (D.P.R. 1967).............................................................8

*Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99 (3d Cir. 2009) ………………..…….7

*Podobnik v. U.S. Postal Serv.*, 409 F.3d 584 (3d Cir. 2005) ……………………………………….4

*Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687 (2d Cir. 1952)...........................................6

*The Golden Gate Knutsen v. Associated Oil Co*., 52 F.2d 397 (9th Cir.1931)..................................9

*Tomen Am., Inc. v. M/V Sava*, No. 97-cv-4332,
1999 U.S. Dist. LEXIS 4628 (E.D.N.Y. Apr. 7, 1999) ……………………………………….....8

*Trans-Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120 (9th Cir. 2008) ………..….8, 10

*Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409 (4th Cir. 2009)……...5, 6, 9

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310,
75 S. Ct. 368, 370, 99 L. Ed. 337 (1955).........................................................................................5

*World Fuel Servs. Sing. PTE, Ltd. v. Bulk Juliana M/V*,
822 F.3d 766 (5th Cir. 2016)…………………………………………………………..……….7

*World Fuel Servs. Trading v. Hebei Prince Shipping Co.*,
783 F.3d 507 (4th Cir. 2015)…………….......……………………………………………..6, 7

## **Statutes**

28 U.S.C. § 1333 ……………………………………………………………………..……1

46 U.S.C. § 31301 *et seq*………………………………………………………………...………7

46 U.S.C. §§ 31301-31343 …………………………………………………………………..…………1

46 U.S.C. § 31342(a) …………………………………………………………………………………7, 8

**Rules**

Fed. R. Civ. P. 56 …………………………………………………………………………………….3

Supplemental Rules for Certain Admiralty and Maritime Claims Rule C ……………...…..1, 7, 10

**Other Sources**

11 Williston on Contracts § 30:25 (4th ed. 1999)............................................................................6

**COMES NOW**, Plaintiff Glander International Bunkering Inc. (hereinafter "Plaintiff" or "Glander"), by and through undersigned counsel of record, hereby files this memorandum of law in support of Plaintiff's Motion for Summary Judgment. For the reasons set forth more fully below, it is respectfully submitted that there are no genuine issues of material fact in dispute that Plaintiff has a maritime lien against the *in rem* Defendant M/V DVINA GULF (hereinafter "Vessel") and is therefore entitled to judgment as a matter of law against the Vessel and specially appearing Claimant Viterlef Management Co., Inc. (hereinafter "Viterlef" or "Claimant"), in the amount of $718,710.60, plus applicable interest and costs as awarded by the Court.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This is a simple case involving a *bona fide* maritime lien, which Plaintiff is entitled to enforce against the Vessel as a matter of U.S. law. Plaintiff commenced this action on February 11, 2019 and sought to arrest the Vessel within the District pursuant to 28 U.S.C. § 1333, and §31341 of the Commercial Instruments and Maritime Lien Act (hereinafter "CIMLA"), 46 U.S.C. §§ 31301-31343 and pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Rule C"). *See* DE 1. On February 11, 2019, this Honorable Court issued an Order authorizing the issuance of a warrant of arrest of the Vessel within the District. *See* DE 9; DE 11. The Vessel was arrested by the U.S. Marshal and Substitute Custodian, before being released upon the agreement of the parties, once Claimant posted substitute security in the amount of USD 1,078,065.90 into escrow, pursuant to a separately executed Escrow Agreement. DE 14.

The Vessel is a chemical oil tanker engaged in world-wide trade and owned by Claimant Viterlef. SOF ¶ 1. The Vessel was time chartered to Sea Oil Shipping Ltd. ("Sea Oil") by

---

[1] Plaintiff's references to the accompanying Statement of Facts are abbreviated "SOF."

Viterlef on March 22, 2018. *Id*., at ¶ 3. Sea Oil, as charterer, placed two (2) orders for bunker fuel to be supplied to the Vessel during the summer of 2018. SOF ¶¶ 4-9. Plaintiff entered into two (2) bunker supply contracts with Sea Oil, both of which incorporated Plaintiff's General Terms and Conditions of Sale (GTCS) dated 1st of November 2017. *Id*., at ¶¶ 8-9. The GTCS include an express law and jurisdiction clause which call for the application of U.S. law. *Id*., at ¶ 10.

Plaintiff supplied 849.739 metric tons of bunker fuel on June 3, 2018 at Rotterdam and 1200.083 metric tons of bunker fuel on July 25, 2018 at the port of Rio Grande. *Id*., at ¶¶ 11, 14. The bunkers were consumed onboard by the M/V DVINA GULF, yet Plaintiff remains unpaid for the bunkers supplied. *Id*., at ¶¶ 17-18. There is no dispute that there remains an outstanding balance of USD 134,669.51 due under the First Bunker Supply Contract and USD 584,041.09 due under the Second Bunker Supply Contract. *Id*., at ¶¶ 12-13, 15-16. In total, Plaintiff has suffered damages in the amount of USD 718,710.60, plus interest and costs. *Id*. at ¶ 17. Plaintiff incurred recoverable costs of at least USD 9,915.65 in order to arrest the Vessel in the District of New Jersey. *Id*., at ¶ 19.

It is respectfully submitted that the evidence in the record clearly shows that: (1) there were two valid Bunker Supply Contracts between Plaintiff and the Vessel's charterer Sea Oil; (2) that the bunk fuel was delivered to the M/V DVINA GULF; and (3) that Plaintiff has not received payment for the necessaries supplied to the Vessel. As discussed more fully below, the Bunker Supply Contracts were subject to the General Terms and Conditions of Sale which included a mandatory, exclusive, and valid U.S. choice of law clause which grants Plaintiff Glander a valid maritime lien against the Vessel pursuant to applicable U.S. law and CIMLA. Plaintiff is therefore entitled to judgment as a matter of law in the full amount of the value of the maritime lien, USD

2

718,710.60, plus applicable interest and costs. For the reasons more fully set forth below, Plaintiff respectfully requests that this Honorable Court grant its motion for summary judgment.

## ARGUMENT

### A. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, a party "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment requires that the nonmoving party "go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Cleotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The burden is on the moving party to establish the absence of a genuine issue of fact. *Cleotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 265 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 585-86. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 s. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. (internal citations omitted); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005); *Guida v. Paul Revere Life Ins. Co.*, 937 F. Supp. 355 (D.N.J. 1995), *aff'd* 96 F.3d 1432 (3d Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court's function at the summary judgment phase is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B. THE BUNKER SUPPLY CONTRACTS ARE GOVERNED BY AND ENFORCEABLE UNDER U.S. LAW

The contracts for the supply of bunkers to the M/V DVINA GULF are comprised of the Bunker Supply Confirmations and the General Terms and Conditions of Sale incorporated therein. SOF, ¶¶ 4-10. Plaintiff is a United States based company in the business of providing maritime necessaries to ships, namely bunkers, with an address at 2401 PGA Blvd., Suite 155, Palm Beach Gardens, Florida 33410. SOF ¶ 2. The two (2) bunker supply confirmations included the following language on page two of each confirmation, "Our General Terms and Conditions of Sale (GTCS) dated 1st of November 2017, available on our website at www.gibunkering.com[2] and upon request, shall apply to this contract and all Copy available on request." *Id.* at ¶ 8. Clause 19 of the GTCS specifically and exclusively call for the application of U.S. law to the resolution of any dispute. *Id.*, at ¶¶ 10. The GTCS also include a reference to U.S. law at Clause 14, which is entitled "Lien" and states in relevant part:

---

[2] The terms and conditions have since been revised as of June 1, 2020, but still exclusively call for the application of U.S. law to resolve any dispute.

4

> ***The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien****, regardless of the country in which Seller takes legal action. Seller shall be entitled to assert it rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.*

*Id.*, at Clause 14, emphasis added.

In determining the enforceability of a choice-of-law provision, the Court should look to principles of federal maritime law. *See generally M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972); *see also Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409,413 (4th Cir. 2009). "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized **as valid and enforceable**." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236, 239 (5th Cir. 2009) (emphasis added)(quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368, 370, 99 L. Ed. 337 (1955)(citing with approval *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 262, 50 V.I. 1134 (3d Cir. 2008)). That is especially the case here given that Plaintiff is a U.S. company and it would not be unexpected for it to invoke and rely upon the general maritime law of the United States of America and CIMLA in its bunker supply contracts.

Federal maritime and contract law principles mandate the legal conclusion that the bunker supply provided as per the terms of the contract between Glander and Sea Oil fully and properly incorporated by reference the Glander General Terms and Conditions of Sale. The incorporation of a party's terms and conditions from a website into a maritime contract by reference is recognized under federal maritime law. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267-69 (5th Cir. 2011) ("Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.");

*see also World Fuel Servs. Trading v. Hebei Prince Shipping Co.*, 783 F.3d 507, 518-19, 2015 U.S. App. LEXIS 6341, 2015 AMC 929 (4th Cir. 2015) ("The Bunker Confirmation plainly expresses that it incorporates the terms of another specific document, the General Terms. Consequently, [Buyer], along with any other reader of the Bunker Confirmation, was immediately put on notice of the existence of a specific additional document that contained provisions that were also part of the Bunker Confirmation."); 11 Williston on Contracts § 30:25 (4th ed. 1999) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument."). Simply put, the incorporation by reference doctrine has been regularly applied to maritime contracts. *See e.g. New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (citing *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952).

Plaintiff clearly and purposefully incorporated U.S. law into the General Terms and Conditions of Sale, and specifically, the right to arrest the Vessel *in rem*, pursuant to the general maritime law of the United States and CIMLA. Under applicable and foregoing authorities, it is clear that U.S. law governs the resolution of this dispute.

### C. PLAINTIFF HAS A VALID MARITIME LIEN AGAINST THE VESSEL

As the bunker supply contracts incorporate and apply U.S. law, Plaintiff has a valid maritime lien against the Vessel and is entitled to judgment as a matter of law in order to enforce and satisfy its lien against the substitute *res* held in escrow. A vessel, such as the M/V DVINA GULF is a distinct entity, and therefore statutorily liable for its own debts. *Triton Marine Fuels Ltd., S.A.*, 575 F.3d 409, 414 (4th Cir. 2009)("the vessel is the obligor regardless of whether the owner is obligated."); *see also World Fuel Servs. v. Magdalena Green M/V*, 464 Fed. Appx. 339

(5th Cir. 2012); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 2013 U.S. Dist. LEXIS 160489 (S.D.N.Y. Nov. 6, 2013)(a person providing necessaries to a vessel has a maritime lien on the vessel); *World Fuel Servs. Sing. PTE, Ltd. v. Bulk Juliana M/V*, 822 F.3d 766 (5th Cir. 2016).

The statutory basis for maritime liens is pursuant to CIMLA. *See* 46 U.S.C. § 31301 *et seq*. Relevant to the Court's determination here, Section 31342(a) of CIMLA, provides as follows:

> Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342(a); *see also Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 102-03 (3d Cir. 2009) ("[A]ny action *in rem* pursuant to Supplemental Rule C to enforce a maritime lien on a vessel must be premised on the existence of a valid maritime lien at the time that the action was filed.") (internal citation omitted); *Blominflot, Inc. v. M/V Henrich S*, 465 F.3D 144, 146 (4th Cir. 2006). "The origin of the maritime lien is the need of the ship. The lien is given for supplies which are necessary to keep the ship going." *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280, 60 S. Ct. 937, 84 L. Ed. 1197 (1940). To demonstrate a maritime lien under CIMLA, courts have summarized "a presumption arises that one furnishing supplies to a vessel acquires a maritime lien." *Maritrend, Inc. v. Serac & Co.*, 348 F.3d 469, 471(5th Cir. 2003). Thus the question of whether Plaintiff Glander possesses a maritime lien in this matter on its *in rem* claim, begins and ends with the determination of whether the statutory requirements of 46 U.S.C. § 31342 are satisfied. Simply put, they are.

Plaintiff provided (1) necessaries; (2) to a Vessel; and (3) on the order of the owner, charterer, or a person authorized by the Owner and therefore has satisfied the requirements to

7

demonstrate a lien on the M/V DVINA GULF. *See Lake Charles Stevedores. Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 228-29 (5th Cir. 1999).

### 1. *Bunkers are Necessaries under CIMLA*

It is well settled that bunkers, such as those supplied to the Vessel under the First Bunker Supply Contract and Second Bunker Supply Contract in this case, are necessaries. *See Ferromet Resources, Inc. v. Chemoil Corp.*, 5 F.3d 902, 904 (5th Cir. 1993); *see also Nustar Energy Servs. v. M/V Cosco Auckland,* No. 4:14-cv-3648, 2015 U.S. Dist. LEXIS 145036, at *4 (S.D. Tex. Oct. 26, 2015) ("[i]t is undisputed that … bunkers are "necessaries" under [] [CIMLA]")*; Marine Oil Trading Ltd. v. M/V PAROS*, 287 F. Supp. 2d 638, 641 (E.D. Va. 2003) ("Necessaries include fuel bunkers."); *Tomen Am., Inc. v. M/V Sava*, No. 97-cv-4332, 1999 U.S. Dist. LEXIS 4628, *1 (E.D.N.Y. Apr. 7, 1999) (Bunkers are necessaries "as defined under the Maritime Liens Act, 46 U.S.C. § 31341."); *see also Blominflot, Inc. v. M/V Henrich S*, 465 F.3D at, 147 (4th Cir. 2006); *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986) (en banc).

"Fuel oil is part of the vessel its tackle, boilers, engines, etc. Without it, the vessel cannot move and, consequently it becomes necessary and indispensable to the vessels in navigation." *Boland Marine & Mfg. Co., Inc. v. M/V HER AN*, 1998 U.S. Dist. LEXIS 6809, * 7 (E.D. La. 1998) (quoting *Payne v. SS Tropic Breeze*, 274 F. Supp. 324 (D.P.R. 1967)); *Trans-Tec Asia v. M/V Harmony Container,* 518 F.3d 1120, 1128 (9th Cir. Cal. 2008) ("Fuel bunkers are "necessaries" within the meaning of § 31342, as they were "useful" to the [Vessel] and "enable[d] her to perform her particular function.") (quotes omitted). Accordingly, the first requirement under CIMLA has been met. *See* SOF, ¶¶ 11, 14.

8

### 2. *Bunkers were supplied to the Vessel*

Plaintiff delivered[3] bunkers to the Vessel under the First Bunker Supply Contract at the Port of Rotterdam which is evidenced in the record by the copy of the Bunker Delivery Receipt received and signed for by the Vessel. *See* SOF, ¶11. Defendant accepted the bunkers supplied by Plaintiff and affixed the signature and seal for the master of the Vessel. *Id*. In addition, Plaintiff delivered bunkers to the Vessel under the Second Bunker Supply Contract at the Port of Rio Grande which is supported by the copy of the Second Bunker Delivery Receipt received and signed for by the Vessel. *See* SOF, ¶ 14. Once again, the bunkers were accepted and the master of the Vessel. *Id*. There is no dispute that Plaintiff supplied bunkers to the Vessel under the First Bunker Supply and the Second Bunker Supply, and the master of the Vessel accepted the bunkers for consumption by the Vessel and they were consumed onboard. *Id*., at ¶¶ 11, 14, and 18

### 3. *Sea Oil Was Authorized to Bind the Vessel*

At all material times, Sea Oil was the charterer of the Vessel. *See* SOF, ¶¶ 3-7. As charterer, Sea Oil had authority to incur a maritime lien on the Vessel. CIMLA presumes that Charterers, which take over operational control of a vessel will have the authority to procure necessaries for a vessel, including bunkers. "It is a fundamental tenet of maritime law that charterers and their agents are presumed to have authority to bind the vessel by the ordering of necessaries." *Triton Marine Fuels, Ltd. v. M/V Pacific Chukotka*, 575 F.3d 409, 414 (4th Cir. 2009) (cleaned up); *see also* 46 U.S.C. § 31341(a); *Galehead, Inc. v. M/V ANGLIA*, 183 F.3d

---

[3] It is hornbook admiralty law that a party need not have physically supplied the bunkers in order to have provided the necessary to the Vessel. *See, Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1245, 1999 U.S. App. LEXIS 18404, *5, 1999 AMC 2952, 12 Fla. L. Weekly Fed. C 1155 (11th Cir. 1999) ("a party need not be the physical supplier or deliverer to have 'provided' necessaries under the statute.")(citing *The Golden Gate Knutsen v. Associated Oil Co*., 52 F.2d 397, 400 (9th Cir.1931); *A/S Dan-Bunkering Ltd. v. M/V Zamet*, 945 F. Supp. 1576, 1578-79 (S.D.Ga.1996).

1242, 1245 (11th Cir. 1999) ("A charterer is authorized under the statute to bind a vessel for necessaries."); *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120, 1127-28 (9th Cir. 2008). The fact that neither the Vessel nor the Owners were parties to the bunker supply contracts is immaterial to the existence of a maritime lien. *See, e.g., Oceanconnect.com, Inc. v. M/V FESCO ANGARA*, No. 2:09-1694, 2012 U.S. Dist. LEXIS 125241 at * 12-13 (W.D. La. Aug. 31, 2012); *Trans-Tec Asia*, 518 F.3d at 1126-27. Plaintiff provided bunkers to a party authorized to act on behalf of the Vessel and bind the Vessel. Plaintiff rightfully and legally acquired a maritime lien against the Vessel.

Based on the foregoing, it is respectfully submitted that Plaintiff Glander provided a supply of bunkers to a Vessel pursuant to a contract entered into with a party authorized to act on behalf of the Vessel, and as such has rightfully and legally acquired and is entitled to a maritime lien in that Vessel. There are no genuine issues of material fact in dispute with respect to the supply and it is respectfully submitted that judgment should be entered in Plaintiff's favor.

### D. PLAINTIFF IS ENTITLED TO RECOVERY OF ITS COSTS AND INTEREST

Plaintiff respectfully submits that it has incurred costs in the amount of no less than $9,915.65 in order to arrest the Vessel in the District of New Jersey pursuant to Supplemental Rule C. *See* SOF at ¶ 19. Plaintiff respectfully submits that there are no material disputed facts about the costs paid to the Clerk of the Court or the Substitute Custodian for services rendered in connection with the arrest of the Vessel and these may be awarded pursuant to 28 U.S.C. § 1920 and 28 U.S.C. § 1921(a). In addition, Plaintiff respectfully submits that this Court can (and should) enter an order for prejudgment interest from the no later than the date of filing of the complaint, *i.e.* February 11, 2019. *Matter of Bankers Trust Co.*, 658 F.2d 103, 108 (3d Cir. 1981), *cert. denied*, 456 U.S. 961, 102 S. Ct. 2038, 72 L. Ed. 2d 485 (1982) ("The rule in admiralty is

that "prejudgment interest should be awarded unless there are exceptional circumstances that would make such an award inequitable.").[4]

## CONCLUSION

**WHEREFORE**, Plaintiff Glander International Bunkering Inc. respectfully requests that this Honorable Court grant Plaintiff's motion for summary judgment and enter judgment in its favor in the amount of $718,710.60, plus applicable costs and interest, and grant it such other and further relief that is just and proper in this matter.

Dated: February 5, 2021
      Oyster Bay, New York

Respectfully submitted,

CHALOS & CO, P.C.

By:   /s/ Melissa Patzelt-Russo
      Melissa Patzelt-Russo, Esq. (MP-8150)
      Briton P. Sparkman, Esq. (Admitted PHV)
      55 Hamilton Avenue
      Oyster Bay, New York 11771
      Telephone: 516-714-4300
      Facsimile: 516-750-9051
      mrusso@chaloslaw.com
      bsparkman@chaloslaw.com

*Attorneys for Plaintiff*
*Glander International*
*Bunkering Inc.*

---

[4] Plaintiff respectfully reserves the right to submit supplemental briefing on the issue of the applicable rate of pre-judgment interest and final costs once summary judgment has been granted.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February 2021, a true and correct copy of Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment was served on all counsel of record:

Michael E. Unger, Esq.
Freehill Hogan & Mahar
549 Summit Ave.
Jersey City, NJ 07306-2701
Telephone: 973-623-5514
Facsimile: 973-623-5514

*Attorneys for Viterlef Management Co. Inc. as Owner and Claimant to the in rem defendant vessel M/V DVINA GULF*

/s/ Melissa Patzelt-Russo
Melissa Patzelt-Russo, Esq.